UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SUSANNE E. GRIFFITH,

                          Plaintiff,

      v.

CAROLYN W. COLVIN, Commissioner of
Social Security, [1]

                    Defendant.

Case No. 3:12-cv-05475-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

        On July 2, 2008, plaintiff filed an application for disability insurance benefits, alleging

disability as of March 15, 2007, due to chronic back pain, high blood pressure and anxiety.  See

Administrative Record ("AR") 16, 115, 141.  That application was denied upon initial

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

ORDER - 1

administrative review on November 17, 2008, and on reconsideration on February 26, 2009. See AR 16, 60, 68.  A hearing was held before an administrative law judge ("ALJ") on January 4, 2011, at which plaintiff, represented by counsel, appeared and testified. See AR 48-57.

In a decision dated January 13, 2011, the ALJ determined plaintiff to be not disabled. See AR 16-31.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 6, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981.  On May 31, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1.  The administrative record was filed with the Court on September 18, 2012. See ECF #9.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, because the ALJ erred in evaluating the medical evidence in the record and in discounting plaintiff's credibility.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that the Commissioner's final decision should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

ORDER - 2

1   proper legal standards were not applied in weighing the evidence and making the decision.")

2   (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

3       Substantial evidence is "such relevant evidence as a reasonable mind might accept as

4   adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation

5   omitted); <u>see</u> <u>also</u> <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

6   supported by inferences reasonably drawn from the record.").  "The substantial evidence test

7   requires that the reviewing court determine" whether the Commissioner's decision is "supported

8   by more than a scintilla of evidence, although less than a preponderance of the evidence is

9   required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

10  admits of more than one rational interpretation," the Commissioner's decision must be upheld.

11  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

12  sufficient to support either outcome, we must affirm the decision actually made.") (quoting

13  <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

14  I.   <u>The ALJ's Evaluation of the Medical Evidence in the Record</u>

15      The ALJ is responsible for determining credibility and resolving ambiguities and

16  conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).

17  Where the medical evidence in the record is not conclusive, "questions of credibility and

18  resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639,

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them.  It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
> not try the case de novo, neither may it abdicate its traditional function of review.  It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Sec. Admin.</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need

ORDER - 4

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v.</u>

<u>Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v.</u>

<u>Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir.

2001).   An examining physician's opinion is "entitled to greater weight than the opinion of a

nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.   A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record."

<u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.      Dr. Rankin

Plaintiff challenges the ALJ's findings concerning the opinions of one of her treating

physicians, Christopher Rankin, M.D.  Those findings read in relevant part:

> On July 25, 2008, Dr. Rankin reported the claimant could begin active range
> of motion of the right upper extremity with a one to two pound lifting
> restriction over the next four to six weeks (Exhibit 12Fp20).  On July 30, 2008
> Dr. Rankin completed an insurance form opining that the claimant could sit
> for eight hours, stand for two hours, and walk for one hour in a workday.  He
> opined that the claimant could occasionally bend, twist and stoop.  Dr. Rankin
> opined that the claimant should never climb, reach above shoulder level, or
> operate heavy machinery.  He opined that the claimant should not lift, push,
> pull, or perform fine finger or hand/eye coordinated movements with the right
> arm.  Dr. Rankin reported the claimant should continue to wear the sling on
> her right arm and expected improvement in her capabilities in the next four
> weeks (Exhibit 3Fp2).  On June 9, 2009, Dr. Rankin recommended a
> limitation to sedentary levels of activity and avoiding the use of the right
> upper extremity for overhead and shoulder height activities.  He noted the
> claimant would return for re-evaluation in eight to 10 weeks (Exhibit 12Fp2).
> On April 20, 2010, Dr. Rankin reported the claimant's main restriction was
> with overhead reaching and lifting (Exhibit 18Fp8).  He completed a medical
> source statement on October 11, 2010, shortly after the claimant had her
> second right shoulder surgery.  Dr. Rankin opined that the claimant's right
> proximal humerus fracture had no affect [sic] on her ability to sit, stand or
> walk.  He opined that the claimant should not use the right arm, but her
> restrictions would be re-evaluated at the next appointment (Exhibit 19Fp4).  I
> assign some weight to those opinions, but note that the claimant was still
> recovering from surgery in July 2008.  More recently, Dr. Rankin opined that

the claimant had no restriction standing, walking or sitting as a result of the right humerus fracture.  Consequently, I assign less weight to his earlier opinion that the claimant would be limited to sedentary activities.  I accept that the claimant has limitations reaching above shoulder level with the right upper extremity.  She was still recovering from the second shoulder surgery when Dr. Rankin recently opined that she should not use the right arm.  He intended to re-evaluate her and did not indicate this was a permanent restriction.  I note that at the hearing the claimant used both arms to pull out a chair and to settle in.

AR 28.  Plaintiff argues the ALJ erred in so finding here.  The undersigned disagrees.

As noted by plaintiff, on June 9, 2009, Dr. Rankin opined that:

. . . Given [sic] degree of varus alignment of her proximal humerus there is likely to be a permanent limitation of her forward elevation and abduction.  Therefore recommendation would be for limitation to sedentary levels of activity and avoiding use of extremity for overhead and at shoulder height activities. . . .

AR 280.  Plaintiff argues this shows Dr. Rankin's recommendation for sedentary levels of activity was "inextricably linked" to the permanent limitation he found in her forward elevation and abduction, and therefore the ALJ "could not credibly accept that [she] had a permanent limitation in the use of her right harm yet still claim the limitation to sedentary levels of activity was not permanent." ECF #11, p. 9.  This argument, however, misses the point.  As noted by the ALJ, Dr. Rankin subsequently opined in early October 2010, that plaintiff's impairment did not result in *any* limitations in plaintiff's ability to sit, stand or walk following her second surgery in regard thereto.  See AR 509.  Plaintiff presents no argument as to why the ALJ should not have given more credence to this more recent opinion, nor does the undersigned find any reason to overturn his decision to do so.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative.").

B.     Dr. Mourning

Plaintiff also challenges the ALJ's following findings concerning David Mourning, M.D.,

ORDER - 6

another of her treating physicians:

> On March 28, 2007, Dr. Mourning completed an insurance form opining that the claimant should not lift or sit or stand for greater than 10 minutes. He indicated the claimant could return to work full-time on April 15, 2007 (Exhibit 13Fp73). On August 27, 2007, he opined that the claimant could return to work September 4, 2007, with maximum lifting of 15 pounds and working no more than four hours per day (Exhibit 3Fp15). On October 2007, Dr. Mourning filled out another form approving the claimant continue working with modifications for four hours per day (Exhibit 3Fp7). On November 14, 2007, [h]e opined that the claimant was currently restricted to lifting no more than 10 pounds. Dr. Mourning opined that the claimant could not work more than four hours a day and would need at least 15-minute breaks every hour where she could sit and relax (Exhibit 13Fp45). On March 5, 2008, Dr. Mourning opined that the claimant could sit continuously for eight hours, stand for two hours intermittently, and walk for two hours intermittently. He opined that the claimant could occasionally climb, reach above shoulder level, and operate heavy machinery. Dr. Mourning opined that the claimant should not twist, bend or stoop. He opined that the claimant could lift up to 10 pounds continuously and up to 20 pounds occasionally. Dr. Mourning opined that the claimant could push, pull and perform fine finger and hand/eye coordinated movements continuously bilaterally. He subsequently indicated the claimant should not lift more than 10 pounds. Dr. Mourning indicated he expected improvement in the claimant's capabilities in three months (Exhibit 3Fp4-5). On March 6, 2009, Dr. Mourning opined that the claimant should take five-minute breaks after sitting for an hour. He opined that the claimant should not climb or operate heavy machinery. Dr. Mourning opined that the claimant could occasionally reach above shoulder level, bend, stoop and twist. Dr. Mourning opined that the claimant could stand for eight hours intermittently and walk for eight hours intermittently. He thought the claimant could return to work on a part-time or full-time basis at a very sedentary level (Exhibit 13Fp2).

> I assign less weight to the serial opinions of Dr. Mourning. In the note dated November 14, 2007, he reported the claimant tried to go back to work four hours per day, but was unable to continue working and had to resign due to severe back pain (Exhibit 13Fp45). This was disingenuous since his treatment note from October 31, 2007, shows he was aware that the claimant resigned from her job because she tested positive for marijuana (Exhibit 13Fp46). In the November 14, 2007 note, Dr. Mourning reported the claimant's current diagnosis was lumbar strain. Obviously, lumbar strain is not a permanent condition. I further note that on March 6, 2009, Dr. Mourning opined that the claimant could work part-time or full time at a very sedentary level. However, he also opined that the claimant could stand for eight hours intermittently and walk for eight hours intermittently, which indicates a

ORDER - 7

greater than sedentary functional capacity.  Dr. Mourning's limitations have
no predicate in the objective medical record.

AR 28-29 (internal footnote omitted).  Although plaintiff asserts error in the ALJ's findings here,
again the undersigned disagrees.

In a letter dated March 6, 2009, Dr. Mourning stated that he disagreed that plaintiff could

sit continuously for eight hours at a time, and that "her return [to] employment on a part-time or

full-time basis [wa]s possible with restrictions but at a very sedentary level." See AR 315.  But

as noted by the ALJ, Dr. Mourning also did not disagree with a restriction limiting plaintiff to

being able to "stand 8 hours intermittently and walk 8 hours intermittently." Id.  Plaintiff first

argues the ALJ ignored the fact that the letter Dr. Mourning wrote was "submitted in response to

an inquiry from [her] insurance carrier." ECF #11, p. 12.  But plaintiff fails to explain why this

should matter in terms of evaluating the opinions contained therein. See Lester, 81 F.3d at 832

(absent "evidence of actual improprieties" purpose for which medical report is obtained does not

constitute legitimate basis for rejecting it).

Plaintiff also argues the standing and walking limitation contained in the above letter is

not consistent with the opinions Dr. Mourning offered elsewhere, which show that "despite

initial optimism that [she] would be able to return to full-time work, Dr. Mourning subsequently

found that [she] was limited to part-time work." ECF #11, p. 12.  But while plaintiff's reading of

the evidence may have some validity, so too does the ALJ's if not more so. See Allen, 749 F.2d

at 579 (noting that "[i]f the evidence admits of more than one rational interpretation" ALJ's

decision must be upheld, and that "[w]here there is conflicting evidence sufficient to support

either outcome, . . . the decision actually made" must be affirmed).  Indeed, the March 6, 2009

letter contains the most recent opinion Dr. Mourning provided. See Osenbrock, 240 F.3d at 1165

(most recent medical reports are highly probative).

ORDER - 8

Plaintiff argues as well that at most the opinions contained in the March 6, 2009 letter were ambiguous, thus triggering the ALJ's duty to further develop the record.  The ALJ does have a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan, 242 F.3d at 1150 (citations omitted).  In addition, the Social Security Regulations state that when evidence from a medical source is inadequate to determine whether a claimant is disabled, that source will be re-contacted to seek additional evidence or clarification when his or her report "contains a conflict or ambiguity that must be resolved" or when it "does not contain all the necessary information." 20 C.F.R. § 416.912(e)(1).

It is only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence," however, that the duty to "conduct an appropriate inquiry" is triggered. Tonapetyan, 242 F.3d at 1150 (citations omitted). Here, though, the ALJ did not find the record was inadequate to allow for proper evaluation of the evidence contained therein.  Nor can the undersigned say that the reference to working at "a very sedentary level" reaches the level of ambiguity requiring resolution through further inquiry by the ALJ, as opposed to a mere inconsistency the ALJ was well within his authority to resolve. See Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642; Morgan, 169 F.3d at 601.  Indeed, it was entirely reasonable for the ALJ to go with Dr. Mourning's more specific limitations on the ability to stand and walk than with the more amorphous term "sedentary", given that Dr. Mourning did not explain what he meant by that term.  At the very least, plaintiff has not shown that her own reading of this evidence is more rational than that of the ALJ.  Accordingly, plaintiff has failed to establish error on this basis.

Plaintiff further takes issue with the ALJ's statement that it was disingenuous of Dr. Mourning to state in another letter to her insurance carrier dated November 14, 2007, that she

1    "was unable to continue working and had to resign due to severe back pain," in light of the fact

2    that Dr. Mourning's "treatment note from October 31, 2007, shows he was aware that [she]

3    resigned from her job because she tested positive for marijuana." AR 29.  Plaintiff argues this

4    was not a valid basis for so finding, because the letter Dr. Mourning wrote "addressed the root

5    cause of [her] resignation, her pain." ECF #11, p. 12.

6          But as the ALJ pointed out, the October 31, 2007 treatment note clearly shows plaintiff

7    told Dr. Mourning that her employer "allowed her to resign rather than be terminated for" her

8    testing positive for marijuana, and not because of her pain (AR 359), even though that pain may

9    have been the "root cause" of her deciding to use the marijuana in the first place.  Indeed,

10   plaintiff also reported at the time of the October 31, 2007 visit with Dr. Mourning that she felt

11   she was "doing better overall," giving the impression she would have continued "doing light

12   duty work" for her employer had she not failed the drug screen.  Id.  Given this evidence, again it

13   was entirely reasonable for the ALJ to find Dr. Mourning was being disingenuous in stating that

14   plaintiff had resigned "due to the severe pain in her back," while giving no indication that the

15   real reason was her testing positive for marijuana or that such testing at least played a substantial

16   part therein. AR 358.  Thus, here too the ALJ did not err.

17         C.      Dr. Backlund and Dr. Hoskins

18         Lastly in terms of the medical evidence in the record, plaintiff argues the ALJ erred in

19   finding as follows:

20         On October 27, 2008, regional medical consultant William Backlund, M.D., in
           what appears to be a quality assurance exercise, opined that the claimant could
21         lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He opined
           that the claimant could stand and/or walk and sit for about six hours in an
22         eight-hour workday, respectively, with normal breaks.  Dr. Backlund opined
           that the claimant could frequently balance and climb ramps and stairs.  He
23         opined that the claimant could occasionally stoop, kneel, crouch, crawl and
           climb ladders, ropes and scaffolds.  Dr. Backlund opined that the claimant

ORDER - 10

should avoid concentrated exposure to vibration and hazards such as machinery and heights.  He opined that the claimant might be limited to occasional overhead reaching with the right upper extremity (Exhibits 4F, 5F). On February 18, 2009, [s]tate agency medical consultant Robert Hoskins, MD., affirmed Dr. Backlund's assessment (Exhibit 9F).  I assign substantial weight to the opinions of Dr. Backlund and Dr. Hoskins.  Although they did not examine the claimant, they are experts in evaluating the medical issues in disability claims before the Social Security Administration.

AR 28.  Specifically, plaintiff argues the assessment Dr. Backlund and Dr. Hoskins provided "did not accurately capture [her] limitations and w[as] contrary to the record." ECF #11, p. 14. Plaintiff, however, fails to state what limitations they did not accurately capture or how their assessment is contrary to the record. See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

Plaintiff next asserts she "was still undergoing physical therapy as part of her recovery from her second surgery at the time of her hearing." ECF #11, p. 14 (citing AR 53).  But again plaintiff fails to explain how being in physical therapy calls into question the credibility of the assessment provided by Drs. Backlund and Hoskins.  Indeed, as discussed above, less than two weeks post plaintiff's second surgery, Dr. Rankin found no restrictions in terms of her ability to sit, stand or walk. See AR 509.  While it is obviously true that Dr. Backlund and Dr. Hoskins did not have access to plaintiff's medical records concerning her "subsequent injuries and treatment" (ECF #11, p. 14), once more plaintiff has not shown that – other than in regard to the evidence in the record from Drs. Rankin and Mourning with respect to which the ALJ, as discussed above,

ORDER - 11

did not err in rejecting – those records show greater limitations than were found in the October 27, 2008 functional assessment.

Plaintiff argues as well that "[a]bsent an independent basis" for that assessment, the ALJ could not give greater weight thereto than to the opinions of Drs. Rankin and Mourning without clear and convincing reasons for doing so. ECF #11, p. 14.  But as discussed above, the ALJ did provide such reasons.  Finally, plaintiff argues Dr. Backlund and Dr. Hoskins did not mention her diagnosis of osteoporosis, "leaving no way of determining if they considered this impairment when assessing [her] residual functional capacity or whether they based their opinions on the limitations arising only from [her] injuries." ECF #11, p. 14.

The ALJ, however, will be found to commit error only by failing to discuss "significant probative evidence." Vincent, 739 F.3d at 1394-95; see also Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610.  Again, plaintiff has not shown that her osteoporosis diagnosis has resulted in functional limitations greater than those assessed by Drs. Backlund and Hoskins.  Indeed, Dr. Rankin himself did not base the limitations he assessed on such a diagnosis (see AR 228, 280, 290, 292, 302, 456, 458, 461, 483, 486-87, 489, 491, 497, 499, 503, 509), and osteoporosis or not, his most recent functional assessment shows he believed plaintiff would not be restricted from being able to sit, stand or walk.  Likewise, although Dr. Mourning did diagnose plaintiff with osteoporosis in his most recent functional assessment, as discussed above he also found plaintiff would be able to both stand and walk intermittently for 8 hours each. See AR 315.  For all of these reasons, the undersigned finds no error on the ALJ's part here.

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580.

ORDER - 12

In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part because:

. . . her testimony that she received no benefit from the kyphoplasty procedures is not credible.  The claimant was able to return to work on a part-time basis following the first procedure.  She underwent the second kyphoplasty in December 2007 and by March 5, 2008 reported her back was feeling better (Exhibit 13Fp15).

ORDER - 13

AR 25; see Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation," including "prior inconsistent statements concerning symptoms" and other testimony that "appears less than candid").  At the hearing, plaintiff was asked if she got "any benefit" from her kyphoplasty procedures, to which she responded "[n]o". AR 53.  Plaintiff argues the ALJ's reliance on this "one word answer to discredit all of her subjective complaints" does not rise to the clear and convincing level. ECF #11, pp. 16-17.  The ALJ, however, did not discredit all of her subjective complaints on this basis, nor was he required to do so.  Rather, the fact that plaintiff provided inconsistent statements on this issue is itself, as just noted, sufficient to call into question her credibility regarding her allegations of disability, particularly considering that those allegations are based primarily on her the impairment for which the kyphoplasty procedures were performed.  In addition, while plaintiff's answer consisted of one word "no", that word was clear and unequivocal.

The ALJ next discounted plaintiff's credibility on the following basis:

> The claimant was traveling to visit her daughter out of town when she fell and fractured her right proximal humerus in April 2008, which shows her back had improved enough that she could travel.  On October 30, 2008, the claimant told Dr. [Michael] Boltwood she was spending three to five hours per day doing a range of household activities.  She reported she could typically work for up to two hours then needed to rest for 15 minutes.  The claimant reported she could do laundry, bathe her dogs, and prepare meals.  She said her husband did the heavy cleaning such as vacuuming.  The claimant told Dr. Boltwood she drove and got out of the house on a regular basis to run errands and visit family and friends.  She denied problems with social function.  The claimant described having several good friends and indicated she attended a local church (Exhibit 6Fp3-4).  Dr. Boltwood noted the claimant denied any functional limitations related to problems with concentration, persistence or pace.

AR 25-26 (internal footnotes omitted).  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for transferable work

ORDER - 14

1   skills." Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a

2   substantial part of his or her day performing household chores or other activities that are

3   transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

4       The claimant, however, need not be "utterly incapacitated" to be eligible for disability

5   benefits, and "many home activities may not be easily transferable to a work environment." Id.

6   In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized

7   for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

8   Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or

9   her] other testimony." 495 F.3d at 639.

10      The undersigned agrees with plaintiff that the evidence in the record concerning the

11  household chores and other physical activities she has engaged fails to show necessarily that she

12  is able to engage in them for a substantial part of the day without exhibiting significant pain-

13  related symptoms or that those activities are necessarily transferable a work setting. See AR 52-

14  53, 162-67, 179, 190-95.  Nor are such activities necessarily inconsistent with plaintiff's other

15  testimony.  On the other hand, the reports plaintiff made to Dr. Boltwood regarding her lack of

16  problems with concentration, persistence or pace and social functioning (see AR 253, 255), belie

17  her testimony and other reports regarding difficulties in those areas due to anxiety and/or panic

18  attacks (see AR 54-55, 165-66, 193-94).  Accordingly, the ALJ erred only in part in discounting

19  plaintiff's credibility on this basis.

20      The ALJ also discounted plaintiff's credibility for the following reasons:

21      By January 2009 the claimant's shoulder fracture appeared to have healed.
        On February 12, 2009, the claimant reported her right shoulder was only
22      intermittently aching and painful (Exhibit 12Fp5).  On June 9, 2009, she
        reported she had intermittent aching discomfort especially when using the
23      right arm for activities at or above shoulder level (Exhibit 12Fp2).  On
        October 18, 2009, examination of the claimant's right shoulder showed 100

ORDER - 15

degrees active forward elevation and 150 degrees passive forward elevation. She could place her hand on top of her head.  Supraspinatus strength was 4/5 and external rotation strength was 4+/5 (Exhibit 18Fp10).  On March 17, 2010, Dr. [Stephen] Reichley reported the claimant's musculoskeletal findings were normal overall (Exhibit 15Fp7).  On April 20, 2010, the claimant reported her right arm was doing reasonably well and she used it for the majority of daily activities.  Dr. Rankin reported the claimant's main restriction appeared to be with overhead reaching and lifting (Exhibit 18Fp8). The claimant had another shoulder surgery in October 2010.  Again, she testified that she was attending physical therapy twice per week.  Presumably, the claimant will have further improvement in the shoulder.

AR 26.  The ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan, 169 F.3d at 599; Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The undersigned agrees with plaintiff that the ALJ's statement that with ongoing physical therapy "[p]resumably, [she] will have further improvement in the shoulder" is speculative, and thus does not constitute a clear and convincing reason for discounting her credibility.  The other evidence in the record noted by the ALJ, however, does indicate improvement in plaintiff's condition, and therefore the ALJ's reliance on it to discount her credibility was proper.

Finally, the ALJ discounted plaintiff's credibility because:

The claimant's testimony that she has panic attacks approximately twice per week is not supported by the medical records.  I do not see that she mentioned panic attacks to her treating doctors.  On the disability report, she indicated anxiety limited her ability to work.  However, Dr. Boltwood noted the claimant asserted that she had no psychological/psychiatric problems that interfered with her function or rendered her unable to work (Exhibit 6Fp4). The claimant testified that she last left Washington State in approximately 2006.  However, she travelled out of state when she fractured her right proximal humerus in 2008.  The claimant initially testified that she stopped working due to back pain.  However, she subsequently acknowledged that she resigned because she tested positive for marijuana.  These inconsistencies render the claimant's subjective complaints less persuasive.

AR 26-27.  A determination that a claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  As noted above, furthermore, the

ORDER - 16

ALJ properly may consider "ordinary techniques of credibility evaluation," such as prior

inconsistent statements concerning symptoms and other testimony that "appears less than

candid." <u>Smolen</u>, 80 F.3d at 1284.

Plaintiff argues it was improper to discount her credibility on the basis of her failure to

report her panic attacks, asserting that she "very well may have" had them "and simply because

she did not report this to her treatment providers, who were orthopedic specialists, does not mean

it is not true." ECF #11, pp. 18-19.  While the undersigned agrees that the failure to report panic

attacks to orthopedic specialists does not necessarily call into question plaintiff's credibility, she

also did not report them to Dr. Boltwood to whom she was "referred for psychological evaluation

to assist in determining eligibility for disability benefits." AR 253.  In addition, as noted by the

ALJ, plaintiff reported having no psychological or psychiatric problems that interfered with her

social functioning or with her concentration, persistence or pace. <u>See</u> AR 255; <u>see also</u> AR 253

("My issue is physical not mental.").

As discussed above, not all of the ALJ's stated reasons for discounting plaintiff's

credibility were valid.  Nevertheless, the fact that some of the reasons for doing so were

improper does not render the ALJ's credibility determination invalid, as long as that

determination is supported by substantial evidence in the record overall, as it is in this case.

<u>Tonapetyan</u>, 242 F.3d at 1148; <u>see also</u> <u>Bray v. Commissioner of Social Sec. Admin.</u>, 554 F.3d

1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's

credibility, he presented other valid, independent bases for doing so, each with "ample support in

the record").

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded

ORDER - 17

1    plaintiff was not disabled.  Accordingly, the Commissioner's final decision to deny benefits is

2    AFFIRMED.

3        DATED this 22nd day of April, 2013.

4

5

6

7                             Karen L. Strombom

8                             United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 18